KOBBE et al. v. VILLAGE OF NEW BRIGHTON.

(Supreme Court, Appellate Division, Second Department. December 31, 1897.)

NUISANCE—DEFENSE—LEGISLATIVE AUTHORITY.

    Under a special act (Laws 1893, c. 376), the defendant's trustees were authorized to establish and maintain a crematory for the burning and consumption of garbage, etc. In an action to restrain the defendant from so operating the same as to permit stenches or offensive odors to proceed therefrom, held, that the act conferred no authority to conduct it in such a manner as to constitute it a nuisance.

Appeal from special term, Kings county.

Action by Philip F. Kobbe and others against the village of New Brighton. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Sidney F. Rawson, for appellant.

John S. Davenport, for respondents.

HATCH, J. The court below has found, upon evidence which we regard as amply sufficient for the purpose, that the village of New Brighton, acting through its trustees, has maintained a crematory for the incineration of garbage produced by the inhabitants of the village, and has so conducted and managed the process of burning therein as to cause fumes and noxious gases to arise and sickening odors to proceed therefrom, and has poured the same in and upon the residences of the plaintiffs, and has from time to time caused the atmosphere in the neighborhood to be laden, corrupted, and tainted with unclean, offensive, and nauseating odors; that the burning of the garbage in this manner is destructive of the comfort of the plaintiffs, and is injurious to the value of their property; and the court found, as matter of law, that the operation of the crematory as the same had been theretofore conducted was a private nuisance. The court directed judgment enjoining the said village and its board of trustees from causing or permitting any more stenches to come from said crematory. The judgment follows the findings and the conclusions of law announced by the court, and it enjoins the defendant "from so operating, or permitting the operation of, said crematory or furnace as to permit, and from permitting or causing, any more stenches or offensive odors to proceed or escape or come therefrom   *   *   *   in any manner whatsoever." It is quite clear, therefore, that the court has not adjudged that the crematory is, per se, a nuisance, but has only determined that the manner of its operation up to the time of the commencement of the action had been, at least at times, of such a character as to constitute the same a nuisance; and it is such operation, producing these consequences, and such alone, that the judgment restrains. A careful reading of the testimony given upon the trial leads us to the conclusion that while the crematory may not be the most perfect, or as efficient as some others used for a like purpose, yet that it may, by proper and skillful management, be so conducted as to be inoffensive in the accomplishment of the purpose for which it was erected. We are confirmed in this view by the statement found in the brief of the learned counsel for the appellant, where he says:

"The court on July 19th, upon affidavits showing the danger of an epidemic of filth diseases, suspended the operation of its injunction until August 20th, and the incinerator has been run continuously ever since without complaint or cause thereof; showing, not only that the complaint herein was unfounded, but that the facts proved upon the trial not only did not warrant the judgment granted, but did warrant a dismissal of the complaint."

The evidence given upon the trial largely preponderated in establishing that this crematory, as we have before observed, could be so run as not to constitute the same a nuisance. The actual trial demonstrated this fact, if we are to take the statement of the learned counsel above quoted. The inference which counsel seeks to draw therefrom is scarcely permissible, since it is quite consistent with

the fact found, that it was not so operated, and the previously known fact that it could be operated with this result. Therefore the more satisfactory inference would seem to be that, since the operation of the injunction was suspended, proper care had been taken in management and operation, with the production of satisfactory and unobjectionable results. If the crematory can be run without creating a nuisance, as the evidence would seem to establish, there can be no hardship or detriment to public interest in the plaintiffs' insistence that it shall be so run.

We might well rest this case here, and affirm the judgment; but the defendant earnestly insists that it has legislative authority to erect and operate this crematory in the manner in which it has operated it, and that what has been maintained under express authority of the legislature cannot be deemed a nuisance. The defendant invokes the aid of two statutes. The first (chapter 376, Laws 1893) is a special act, and authorizes the board of trustees of the defendant to establish and maintain a crematory in said village for the burning and consumption of garbage, etc., and to contract for its erection and maintenance, and confers power to purchase or lease land necessary for a site. The second is a general law (chapter 666, Laws 1894) authorizing towns and villages having over 10,000 inhabitants to contract for the collection and destruction of garbage by fire or heat. The general law adds nothing to the specific powers conferred by the special act. The question thus presented is not new. It has been thoroughly discussed, and recently decided by the highest court of the state, in four cases: Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537; Bohan v. Gaslight Co., 122 N. Y. 18, 25 N. E. 246; Hill v. City of New York, 139 N. Y. 495, 34 N. E. 1090; Morton v. City of New York, 140 N. Y. 207, 35 N. E. 490. The rule of law announced by the court, through Andrews, C. J., in the first of the above cases, is expressed in these words:

"But the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury."

And this rule has been reiterated in each of the cases which have followed. It is conclusive upon the present question, for here it satisfactorily appears that the management of the crematory prior to the suspension of the injunction was a nuisance, and that since that time it has been so managed as to cease being a cause of complaint. Nowhere is any authority found in the statutes to conduct this crematory in such manner as to constitute it a nuisance. It is not necessary in this case to invoke the aid of any other doctrine. If the legislature had provided for the institution of this crematory, and expressly authorized it to be run in the manner in which it was operated prior to the bringing of this action, it would still be an open question whether it could be so maintained without provision for compensation for the property injured thereby. If such question should be answered in the affirmative, it might well occasion anxiety. Some expressions in the opinions which we have cited tend to allay any fears which may

be excited thereby.    The question need not now be discussed by us, nor are we called upon to express any opinion thereon, as it is not essential to a determination of this case.

The judgment should be affirmed, with costs.    All concur.